Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 14, 2003         Decided April 11, 2003

No. 02-5032

THE RELIABLE AUTOMATIC SPRINKLER CO., INC.,
APPELLANT

v.

CONSUMER PRODUCT SAFETY COMMISSION,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00025)

————

*Stephen P. Murphy* argued the cause for appellant. With him on the briefs was *Edward J. McAndrew*.

*Christine N. Kohl*, Attorney, United States Department of Justice, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, United States Attorney, and *Douglas N. Letter*, Attorney.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: This case arises from an investigation by appellee Consumer Product Safety Commission ("CPSC" or "the Commission") of automatic sprinkler heads manufactured by appellant Reliable Automatic Sprinkler Company ("Reliable"). Commission compliance officials informed Reliable that they intended to make a preliminary determination that the sprinkler heads present a "substantial product hazard" as defined by the Consumer Product Safety Act ("the Act"), 15 U.S.C. § 2064(a). They also requested Reliable to undertake voluntary corrective action to address the alleged hazards associated with the sprinkler heads. In response, Reliable filed suit against the Commission in the District Court, seeking a declaratory judgment that the agency lacks statutory authority to regulate Reliable's sprinkler heads, because they are not "consumer products" as defined by the Act, 15 U.S.C. § 2052(a)(1). The District Court granted the Commission's motion to dismiss for lack of final agency action.

On appeal, Reliable contends that the District Court erred in finding no final agency action. Reliable argues that the Commission has pursued its investigation against the company on the erroneous assumption that the disputed sprinkler heads are "consumer products" under the Act. Thus, according to Reliable, the Commission has taken final agency action in determining that Reliable's sprinkler heads are "consumer products" under the Act and in assuming jurisdiction to regulate them. We reject these contentions.

The Act makes it clear that the Commission has no authority to coercively regulate products before first conducting a formal, on-the-record adjudication. It is undisputed here that the Commission has yet to issue a complaint; it has yet to authorize or conduct a hearing; it has yet to determine conclusively its jurisdiction to regulate; it has yet to determine whether the sprinkler heads present a "substantial product hazard"; and it has yet to issue any compliance

orders against Reliable. CPSC has merely conducted an investigation and issued a letter requesting voluntary compliance. This does not constitute final agency action and is therefore unreviewable. Accordingly, we affirm the judgment of the District Court.

## I. BACKGROUND

The Act, 15 U.S.C. § 2051 *et seq.*, gives the Commission the authority to conduct investigations on the safety of consumer products. *Id.* § 2054(b). A principal responsibility of the Commission is to determine "that a product distributed in commerce presents a substantial product hazard and that notification is required in order to adequately protect the public from such substantial product hazard." *Id.* § 2064(c). If CPSC makes such a determination, it may order the manufacturer, retailer, or distributor of the product to give public notice of the defect, bring the product into compliance with applicable safety standards, replace the product, or refund the purchase price. *See id.* § 2064(c), (d). The agency can make such a determination and issue a compliance order only after affording interested persons an opportunity for a hearing in accordance with the formal, on-the-record adjudication requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 554. *See* 15 U.S.C. § 2064(c), (d), (f).

Prior to initiating the administrative proceedings required under this statutory scheme, the Commission can "attempt to protect the public from substantial product hazards by seeking . . . voluntary remedies," such as "corrective action plans," in which a firm sets forth the remedial action it will voluntarily undertake. 16 C.F.R. § 1115.20. A corrective action plan explains, *inter alia*, how a firm will notify the public of the hazard, and whether the firm will repair or replace the product, or refund the purchase price. *Id.* § 1115.20(a). This voluntary corrective action "has no legally binding effect." *Id.* If the Commission is unable to obtain a firm's voluntary corrective action, it may file an administrative complaint, which initiates formal administrative proceed-

ings, *see id.* § 1025.11, including a trial-type hearing in accordance with the Commission's rules. *See id.* § 1025.

Reliable is a manufacturer of automatic sprinkler heads that are incorporated into automatic fire sprinkler systems installed in commercial buildings. From 1973 to 1983, Reliable manufactured the "Model A Flush" sprinkler heads. In 1999, the Commission's Office of Compliance began investigating these sprinkler heads to determine whether they present a substantial product hazard. On September 11, 2000, Commission compliance officials informed Reliable by letter that "it is the intention of the Compliance staff to make the preliminary determination that these sprinklers present a substantial product hazard, as defined by … 15 U.S.C. § 2064(a)." Letter from Jimmie L. Williams, Jr., Counsel for Office of Compliance, CPSC, to Paul D. Derounian, Counsel for Reliable (Sept. 11, 2000), *reprinted in* Joint Appendix ("JA") 27. But prior to making the preliminary determination, the officials requested Reliable to take "voluntary corrective action," pursuant to 16 C.F.R. § 1115.20(a). *Id.*

To date, Reliable has not submitted a voluntary corrective action plan. The Commission has not yet made a formal determination that the sprinkler heads present a "substantial product hazard," or even filed an administrative complaint initiating the administrative proceedings that would be required before the agency could make such a determination. Indeed, the Commission has not as yet made a record determination that it has jurisdiction over Reliable's sprinkler heads. The Commission has brought administrative enforcement proceedings pursuant to 15 U.S.C. § 2064 against several other manufacturers of sprinkler heads, *see* CPSC Admin. Compl. ¶ 1, JA 59; CPSC Admin. Compl. ¶ 1, JA 166, but Reliable is not a party to those proceedings.

On January 9, 2001, Reliable filed the instant suit against the Commission in the District Court, seeking a declaratory judgment that Reliable's sprinkler heads are not "consumer products" within the meaning of the Act, 15 U.S.C. § 2052(a)(1), which defines "consumer product," subject to certain exceptions, as:

any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise . . . .

Reliable contended that, because its sprinkler heads are not consumer products within the meaning of the Act, the Commission lacked statutory authority to regulate Reliable's sprinkler heads. *See* Complaint for Declaratory Judgment, JA 5, 9-10. The District Court granted the Commission's motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). *See Reliable Automatic Sprinkler Co., Inc. v. CPSC*, 173 F. Supp. 2d 41, 52 (D.D.C. 2001). Relying on *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 243 (1980) (holding that the agency's issuance of an administrative complaint averring reason to believe that the plaintiff was violating the law is not final agency action), the District Court held that the Commission's investigatory steps did not rise to the level of final agency action within the meaning of the APA. *Reliable*, 173 F. Supp. 2d at 52.

## II. ANALYSIS

We review *de novo* the District Court's grant of appellee's motion to dismiss. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001).

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. As a threshold matter, the parties raise the issue of whether the District Court's dismissal of the case pursuant to FED. R. CIV. P. 12(b)(1) was improper, because, in cases such as this one, in which judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional under *Califano v. Sanders*, 430 U.S. 99, 107 (1977) (holding that "the APA does not afford an implied

grant of subject-matter jurisdiction permitting federal judicial review of agency action"). We need not dwell on this issue, for it raises a question of no significance in this case. If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA. Therefore, even though there was no basis for dismissal under Rule 12(b)(1), we may properly affirm the District Court's judgment pursuant to Rule 12(b)(6). *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Having disposed of the threshold issue, we turn now to the question of finality. The District Court's authority to review the conduct of an administrative agency is limited to cases challenging "final agency action." 5 U.S.C. § 704. An agency action is deemed final if it is " 'definitive' " and has a " 'direct and immediate . . . effect on the day-to-day business' " of the party challenging the agency action. *Standard Oil*, 449 U.S. at 239 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)). Final agency action "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks and citations omitted). Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship. *Role Models Am., Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003).

Reliable acknowledges that there has been no final agency action with respect to the question whether Reliable's sprinkler heads present a substantial product hazard. Nevertheless, Reliable seeks judicial review of the Commission's regulatory jurisdiction. Reliable contends that its sprinkler heads are not "consumer products" under the Act, and that the Commission therefore lacks statutory authority to regulate Reliable's sprinkler heads. Reliable argues that, because this is a challenge to the agency's statutory authority to regulate, rather than to the substance of any substantial hazard determination, the agency's pre-enforcement actions are sufficient-

ly final to warrant judicial review of the agency's jurisdiction at this stage. We reject this line of reasoning.

The agency's conduct thus far amounts to an investigation of appellant's sprinkler heads, a statement of the agency's intention to make a preliminary determination that the sprinkler heads present a substantial product hazard, and a request for voluntary corrective action. These agency activities do not constitute final agency action within the meaning of the APA, 5 U.S.C. § 704. Certainly the agency's investigation *assumes* for now that it has jurisdiction to regulate the sprinkler heads. But the agency has not yet made any determination or issued any order imposing any obligation on Reliable, denying any right of Reliable, or fixing any legal relationship. *See Role Models*, 317 F.3d at 331-32. The Act and the agency's regulations clearly prescribe a scheme whereby the agency must hold a formal, on-the-record adjudication before it can make any determination that is legally binding. Here, the agency has not yet taken the steps required under the statutory and regulatory scheme for its actions to have any legal consequences. In the event that the agency should decide to pursue enforcement action against Reliable, the agency must, in the course of the formal adjudication, afford Reliable the opportunity to convince the agency that the term "consumer product" does not include Reliable's sprinkler heads and that the agency therefore lacks jurisdiction to regulate them. But to date, the agency has not even filed an administrative complaint against Reliable.

The leading Supreme Court case on final agency action, *Standard Oil*, held that even the filing of an administrative complaint does not constitute final agency action. *See Standard Oil*, 449 U.S. at 243. It follows that the Commission's actions here, which are merely investigatory and clearly fall short of filing an administrative complaint, are not final agency action. No legal consequences flow from the agency's conduct to date, for there has been no order compelling Reliable to do anything. To be sure, there may be practical consequences, namely the choice Reliable faces between voluntary compliance with the agency's request for corrective action and the prospect of having to defend itself in an

administrative hearing should the agency actually decide to pursue enforcement. But the request for voluntary compliance clearly has no legally binding effect. 16 C.F.R. § 1115.20(a). And, as the Supreme Court stated in *Standard Oil*, the burden of responding to charges in an administrative enforcement hearing "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Standard Oil*, 449 U.S. at 242. *See also Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 742 (D.C. Cir. 1987) (Edwards, J.) ("[T]he litigant's interest in not being forced to defend itself in an allegedly unauthorized proceeding . . . is far less weighty than the court's interest in conserving its judicial resources and discouraging the flouting of administrative procedures."). These consequences attach to any parties who are the subjects of Government investigations and believe that the relevant law does not apply to them. If the Government brings an enforcement proceeding, such parties may defend themselves on the ground that the agency lacks jurisdiction, but they may not preemptively challenge the Government's jurisdiction before the Government has taken any action to enforce the law against them. *See Standard Oil*, 449 U.S. at 243 ("Judicial review . . . should not be a means of turning prosecutor into defendant before adjudication concludes.").

The reason to preclude such interlocutory challenges to agency jurisdiction inheres in the purpose of the final agency action rule. "The interest in postponing review is powerful when the agency position is tentative. Judicial review at that stage improperly intrudes into the agency's decisionmaking process. It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986) (citations omitted). Reliable is mistaken in its claim that a special rule applies when a litigant challenges the agency's authority to regulate rather than the merits of an agency's act of regulation. The policy undergirding the finality requirement "is no less applicable to piecemeal appeals on issues of statutory authority than to piecemeal appeals on other points." *Aluminum Co. of Am. v.*

*United States*, 790 F.2d 938, 942 (D.C. Cir. 1986). So long as Reliable retains the opportunity to convince the agency that it lacks jurisdiction over Reliable's sprinkler heads, it makes no sense for a court to intervene. It conserves both judicial and administrative resources to allow the required agency deliberative process to take place before judicial review is undertaken.

Reliable points out that the Commission has already brought administrative proceedings against several other manufacturers of automatic sprinkler heads and taken the position in those proceedings that sprinkler heads are "consumer products." But in all but one of those cases, only administrative complaints were issued, putting them squarely within the *Standard Oil* realm. And in the one case in which an ALJ actually rendered an opinion resolving a manufacturer's jurisdictional objection, the Commission never passed on the issue because the case was settled. In short, the Commission itself has never considered the issue raised by Reliable, neither in this case nor any other. Moreover, it does not follow from the fact that the CPSC has brought administrative proceedings against other manufacturers that the agency will use its resources to proceed against Reliable. The agency's letter to Reliable merely stated an "intention of the Compliance staff to make the preliminary determination that these sprinklers present a substantial product hazard." Letter from Williams to Derounian, JA 27. We do not know whether the agency will bring administrative enforcement proceedings against Reliable. *Cf. Am. Tel. & Tel. Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001) (finding no final agency action where it was unclear whether the agency had decided to sue the plaintiff). If the agency does decide to pursue a complaint, Reliable will be afforded a hearing in which it will have ample opportunity to convince the agency against the assertion of regulatory jurisdiction and create a record for judicial review should that later be deemed necessary. And a hearing before the Commission will not be an idle gesture, because the agency has made it clear that the interpretation of "consumer product" with respect to sprin-

kler heads remains to be determined. *See* Appellee's Br. 17, 24, 26.

Relying on three pre-enforcement cases in which agency action *was* determined to be sufficiently final to allow for judicial review, *Ciba-Geigy*; *Atlantic Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771 (D.C. Cir. 1985) ("ARCO"); and *Athlone Industries, Inc. v. CPSC*, 707 F.2d 1485 (D.C. Cir. 1983), Reliable argues that we should interpret *Standard Oil* narrowly here, and find that the agency's actions in this case are also sufficiently final to warrant judicial review. We reject this invitation, because the cases cited by Reliable do not support review here.

In *Ciba-Geigy*, the Environmental Protection Agency ("EPA") imposed a deadline for labeling changes for a registered pesticide without affording registrants the notice and hearing procedures set forth in the statute. When an affected party sought judicial review, this court concluded that the letters that EPA sent to the plaintiff

> unequivocally stated EPA's position on the question whether registrants were entitled to a cancellation hearing before labeling changes could be required. Not only did the statement of position admit of no ambiguity, but it gave no indication that it was subject to further agency consideration or possible modification. The letter emphatically required Ciba-Geigy's "immediate compliance."

*Ciba-Geigy*, 801 F.2d at 436-37 (footnote and citations omitted). In the instant case, however, there has been no unequivocal statement of the agency's position on the meaning of "consumer product" or on the agency's jurisdiction over Reliable's sprinklers. The agency has requested voluntary corrective action, but has not ordered Reliable to comply. What is more, in *Ciba-Geigy*, the agency denied the plaintiff any opportunity to be heard; whereas here, a hearing will take place in due course should the Commission decide to pursue enforcement against Reliable.

Reliable's further argument on the basis of *Ciba-Geigy* that, in this case, a "series of agency pronouncements," 801

F.2d at 436 n.7, can make out final agency action is misplaced. Although we so held in *Ciba-Geigy* and in *Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 49 (D.C. Cir. 2000) (holding that "a preamble plus a guidance plus an enforcement letter from EPA could crystallize an agency position into final agency action within APA § 704's meaning"), neither of those cases involved a situation in which, as here, the agency is required by statute to bring an administrative proceeding before it may make any legally binding determination. Here, the agency has not yet done that which the statutory scheme requires for its conduct to constitute final agency action.

In *Athlone*, plaintiff sued to enjoin the assessment of civil penalties in an administrative proceeding that the Commission had initiated, on the ground that the agency lacked the statutory authority to proceed administratively. In holding that the plaintiff did not have to exhaust the prescribed administrative remedies before gaining judicial review of the agency's statutory authority, this court emphasized "the purely legal nature of the issue presented," which required "[n]o factual development or application of agency expertise." *Athlone*, 707 F.2d at 1489. We also emphasized the "likely futility of further resort to" administrative proceedings, since it was "highly unlikely that the Commission would change its position if the case were remanded to it." *Id.* In the instant case, by contrast, the question whether the statutory term "consumer product" includes Reliable's sprinkler heads is not a purely legal one, since the application of the statutory term to the sprinkler heads would clearly involve the resolution of factual issues and the creation of a record. And agency expertise may be relevant to the question whether sprinkler heads are "consumer products."

Although appellant claims that it is highly unlikely that the agency will change its position and that resort to the agency's adjudicatory proceeding would be futile, nothing in the record indicates that the outcome of a hearing, where Reliable will have the opportunity to present its arguments to the agency, is preordained. Appellant argues that the Commission's ad-

ministrative proceedings against other sprinkler manufacturers establish that the agency has taken a definitive position as to its jurisdiction over automatic sprinkler heads in general. But as the District Court reasoned, Reliable "may be able to persuade an administrative law judge that the manner in which its sprinklers are produced and marketed, and the locations in which [they] are installed, demonstrate that they are not 'consumer products.'" *Reliable*, 173 F. Supp. 2d at 51 (citation omitted).

Finally, in *ARCO*, which applied *Athlone*, this court held that the doctrines of exhaustion and ripeness did not bar a challenge to the Department of Energy's authority to adjudicate remedial orders and impose discovery sanctions in such proceedings. Again, the question of the agency's statutory authority was a strictly legal issue for which factual development and agency expertise were unnecessary, and resort to the agency would have been futile, because the agency "structured its regulatory processes on the premise that it has power to act in an adjudicatory capacity." *ARCO*, 769 F.2d at 782. In addition, ARCO was "faced with the dilemma of having to [choose] between complying with allegedly ultra vires discovery orders – and thus revealing materials that otherwise would remain confidential – and flouting the orders and facing the consequences should the Department ultimately be found to have had the power to issue the orders." *Id.* at 783-84.

Reliable's dilemma of having to choose between voluntary corrective action or defending itself in an administrative proceeding, should the agency decide to bring one, is not analogous to the plaintiffs' dilemma in *ARCO*. The discovery orders in *ARCO* were legally binding orders, whereas here, there is no order, only the possibility of Reliable having to defend itself at an enforcement hearing if Reliable does not undertake certain voluntary action, and if the agency decides to proceed against it.

## III.  CONCLUSION

We affirm the judgment of the District Court. The Commission's activities to date do not constitute final agency

action. We therefore dismiss this action pursuant to FED. R. CIV. P. 12(b)(6), because appellant has failed to state a cause of action.