BROWN, Circuit Judge,
concurring in part:
While I join in the' Court’s disposition and in Parts I—III, I write separately as to Part IV. There, the Court’s analysis departs from the statutory text to entertain Gulf Coast’s legal conclusion that its alcohol permit was revoked, not automatically terminated. The Court provides no reason for adopting Gulf Coast’s labeling. This is unwarranted, as “we do not assume the truth of legal conclusions, nor do we accept inferences that are unsupported by the facts set out in the complaint.” Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). Indeed, we are to disregard “labels and conclusions” when evaluating whether a complaint states a claim for relief, see Bell Atl. Corp. v. Twombly, 550 U.S, 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), not indulge them,[1]
The Court manifests a misapprehension of pleading standards. Testing the sufficiency of allegations requires more than merely refusing to rest the Court’s legal conclusions on the' complaint’s; legal conclusions within the complaint are to be disregarded, with the Court then homing in on the “well-pleaded, nonconclusory factual” “nub of the plaintiffs [claim],” if any. See, e.g., Iqbal, 556 U.S. at 680, 129 S.Ct. 1937 (explaining the analysis in Twombly). Then, the Court'is to determine'whether plausible legal conclusions are suggested from those facts alone. See id. Unfortunately, the Court invokes this step-by-step analysis only insofar as it facilitates its desired ends: .
*134 First, far from disregarding the complaint’s legal conclusions, the Court deploys Gulf Coast’s revocation labeling as the premise for analyzing whether the district court had jurisdiction over the Company’s alcohol permit claim. By itself, this is impermissible. See id.
Second, after the Court concludes the district court lacked jurisdiction because we (and ,our sister circuits) possess jurisdiction over revocation claims under 27 U.S.C. § 204, the Court (conveniently) drops Gulf Coast’s revocation label—lest the Court have to explain why it does not want to deal with Gulf Coast filing an amended complaint here, as the Company requested. See Gulf Coast Opening Br. 39 (“If this Court finds that it has exclusive jurisdiction over this matter, we ask that it remand this matter to the district court with modification of the Order so dismissal is not with prejudice and the action may be filed before this Court, or in the consideration of judicial economy, the Court deems the complaint to be filed in this Court.”). By all - but saying Gulf Coast’s revocation pleading is “[f]ar from” plausible, see Op. 131, the Court’s entire discussion of the extent of our jurisdiction over revocations is proved a frolic; a cautionary tale in why one should not start on the wrong foot.
Third, the Court claims Gulf Coast could have engaged in a wild-goose chase through the outer reaches of our “final agency action” case law to state an APA claim in district court over the permit’s automatic termination. But if Gulf Coast’s alcohol permit claim is deficient because the Company sought jurisdiction under the wrong statute or in the wrong court, or simply failed to draw the same liability theories as the Court' from plead facts, why is prejudicial dismissal not reversible error? Because “[t]he court should freely give leave [to amend a complaint] when justice so requires,” Fed. R. Civ. P. 15 (a)(2), dismissals without prejudice are standard fare. I have no problem affirming the district court’s dismissal with prejudice because any amendment would be futile. The statutory scheme set forth by Congress establishes a process that precludes Gulf Coast from doing what it did: Refusing to apply for a new permit application, using, the signature stamp of its deceased owner to continue operating with an automatically terminated permit, and then coming to an Article III court to ask for the due process afforded to revocations. But the Court is not content with a straightforward, textual analysis. Why are we not giving Gulf Coast the opportunity to test the Court’s intriguing theory with an amended complaint? Cf. City of Dover v. United States EPA, 40 F.Supp.3d 1, 5-6 (D.D.C. 2013) (“[B]ecause the Court did suggest an alternative theory based on the facts pled, plaintiffs should have been permitted to test that theory. ... It was error, then, to dismiss plaintiffs’ complaint with prejudice.”).
By adopting Gulf Coast’s legal conclusion, the Court is led astray from some basic points that 27 U.S.C. § 204 and our precedent establish: (1) This Court and the district court lack jurisdiction over Gulf Coast’s alcohol permit claim because there is no jurisdiction over automatic terminations without the denial of a new permit application; (2) The April 2016 TTB letter is riot “final agency action;” and (3) Even if the April 2016 letter could somehow be considered “final agency action,” 27 U.S.C. § 204 adequately displaces APA review of automatic terminations. For these reasons, and for the Court’s lack of reasons, I write separately—even as I agree that the district court lacked jurisdiction • over Gulf Coast’s alcohol permit claim.
I.
Like its tobacco permit claim, Gulf Coast insists the APA affords it a right to notice *135 and an opportunity to be heard before its alcohol permit may cease operating. But Gulf Coast’s argument is not based in the statutory scheme Congress enacted to regulate alcohol permits.
27 U.S.C. § 204 sets forth the alcohol permitting scheme. The statute provides a certain process due when a permit is “revoked,” “suspended,” or “annulled” that is not due when events result in an “automatically terminated” permit. Compare id. § 204(e) (explicitly requiring “due notice and opportunity for hearing to the permit-tee” when a permit is subject to “revocation, suspension, and annulment”) with id. § 204(g) (“A basic permit shall continue in effect until suspended, revoked or annulled as provided herein ... except that ... if transferred by operation of law or if actual or legal control of the permittee is acquired, directly or indirectly, whether by stock-ownership or in any other manner, by any person, then such permit shall be automatically terminated....” (emphasis added)). Section 204(g) goes on to explain, similar to the tobacco permit scheme, that an automatically terminated permit may be succeeded by a timely-filed application for a new permit. See id. There is no such proviso within § 204(e) if a permit is revoked, suspended, or annulled. This distinction informs the meaning of § 204(h)’s discussion of judicial review.
Section 204(h) does not mention appeals from an automatic termination, but it does mention appeals “from any order of the Secretary of the Treasury denying an application for ...' a basic permit.” Id. § 204(h). The section similarly authorizes appeals in response to a permit’s suspension, revocation, or annulment. See id. With suspensions, revocations, and annulments being explicitly cross-referenced, the natural reading of § 204(h)’s reference to “denying an application for ... a basic permit” encompasses the denial of a new permit application filed in response to an automatically terminated permit. The upshot of this reading is that, like in the tobacco permitting scheme, revocation and automatic termination are not the same. Nevertheless, Gulf Coast persists in claiming its entitlement to § 204’s revocation process when its alcohol permit automatically terminated.
II.
Gulf Coast claims a letter from TTB establishes that its permit was revoked. As mentioned above, in April of 2016, TTB wrote Gulf Coast, stating “[information recently received by [TTB] provide[d] the agency with reason to believe that” Gulf Coast was operating without valid permits. JA 72. The letter informed Gulf Coast that “such activities violate federal law,” and “[continued operation without the required permits[ ] subjects you to criminal penalties and potential civil liability.” Id. It then goes on to note Gulf Coast’s unreported change in ownership—characterizing that ownership change as satisfying the “automatic termination” definitions within the alcohol and tobacco permitting schemes—and concludes, “as. a result of these unreported changes, per ... 27 U.S.C. § 204(g) ... [Gulf Coast] has been operating without the required permits since September- 2013.” JA 73 (emphasis added). As to Gulf Coast’s alcohol permit, revocation is neither mentioned nor alluded to, and the statutory process afforded to revocations (under either the alcohol permitting statute or the APA) is not cited. But to Gulf Coast, this correspondence was a “letter decision” that its alcohol permit retroactively terminated—by which the Company means, “revoked”—making the letter “final agency action” subject to judicial review under the APA. See, e.g., Gulf Coast Opening Br. 29.
*136 Section 204 renders the denial of a new permit application—an application made in response to an automatically terminated permit—final agency action subject to judicial review. See 27 U.S.C. § 204(h) (stating the mere .application for a new permit allows “the outstanding basic permit [to] continue in effect until such application is finally acted on by the Secretary of the Treasury,” and if that “final[ ] act[ion]” is denial, judicial review may ensue in a circuit court of appeals). Gulf Coast did not avail itself of this process; short-circuiting the statute’s course by skipping over the new permit application. Doing so left the Company without the statutorily specified “final agency action” that would trigger judicial review, either under' the alcohol permit statute or the APA. See, e.g., Reliable Automatic Sprinkler Co. v. Consumer Prods. Safety Comm’n, 324 F.3d 726/731 (D.C. Cir. 2003); see also 5 U&C. § 704. The letter is not a stand-in for Gulf Coast’s end-run around § 204(h).
Deeming the April 2016 letter “final agency action” would be an unjustifiable expansion of the APA’s scope. The letter’s content and purpose are merely advisory; it reminds Gulf Coast of the consequences of operating with a terminated permit and without a new permit application. Informing Gulf Coast of extant facts does not “impose[ ] an obligation, den[y] a right, or fix[] some legal relationship.” See, e.g., Reliable Automatic Sprinkler, 324 F.3d at 731 (discussing what constitutes “final agency action” under the APA). The letter is reasonably read as indicating when -the statutory trigger automatically .terminating Gulf Coast’s alcohol permit occurred— upon the, company’s failure to timely .report- an ownership change, But “final agency action”' rests on the agency con-, summating' its decision-making process. See Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Moreover, the legal consequences (civil and criminal penalties) identified within the TTB letter are clearly understood to reference the consequences of operating without a valid alcohol permit, not the consequences of refusing to comply with the letter. This also disqualifies the letter from constituting “final agency action.” Cf. id., Reading the letter. in line with Gulf Coast’s legal theory, as the-Court does, impermissibly “accept[s] inferences that are unsupported by the facts.” Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015).
III.
As both the Supreme Court and this Court recognize, the APA is not to “duplicate existing procedures for review of agency action” ór “provide for additional judicial remedies in situations where Congress has provided special and adequate review procedures.” Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); Citizens for Responsibility and Ethics in Washington v. U.S. Dep’t of Justice, 846 F.3d 1235, 1244 (D.C. Cir. 2017), An “adequate” remedy “need not provide relief identical to relief under the APA,” Garcia v. Vilsack, 563 F.3d 519, 522 (D.C. Cir. 2009)—it can, in fact, be less generous than APA relief, see id. (stating a remedy is not “adequate” when that remedy itself “offers only doubtful and limited relief’); see also Council of & for the Blind of Del. Cnty.. Valley, Inc. v. Regan, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (explaining that the alternative review need not be “more effective” than APA review). Accordingly, even if one were to consider the letter TTB issued “final agency action”—rather than merely advising Gulf Coast of extant facts and the consequences of operating without a permit—§ 204 displaces judicial review under the APA,
*137 The new permit application process allowed for Gulf Coast to seek judicial review of the alcohol permit’s automatic termination. Upon the transfer of Mr. Geller’s stock, Gulf Coast could have filed an application for a new'permit with TTB while citing no change in ownership. TTB, independently verifying the ownership assertion in the application and being aware of Mr. Geller’s death and corresponding-stock transfer, might have denied the' new permit application. If so, § 204(h), would have allowed Gulf Coast to appeal that denial to a circuit court, where Gulf Coast could contest whether an ownership, change occurred. During the new permit application process, Gulf Coast could have continued operating under its prior alcohol permit without risking any penalty. Had the Company then appealed the new permit denial, § 204(h) would have stayed TTB’s .decision—preserving Gulf Coast’s old permit, and thus continuing to immunize it from penalties.
To be sure, § 204 required Gulf Coast to do what it claims it did not have to do-file an application for a new permit. But even then, as explained above, Gulf Coast was under no obligation to cite any owrir ership change-, TTB bore the burden of establishing whether Gulf Coast’s assertion of ownership was bona fide before approving a new permit application. Section 204 therefore gave Gulf Coast the opportunity to contest any TTB assertion of an ownership change; the “same genre” of relief the Company , asks for under the APA here, placing § 204 within the realm of “adequate” APA displacement. See El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep’t of Health & Human Servs., 896 F.3d 1265, 1271 (D.C. Cir. 2005). The additional paperwork may seem cumbersome, but it is also de-minimis when compared to the risk Gulf Coast took in not filing anything at all after the. stock transfer.. In any event, an adequate alternative .to APA review need not be “more effective” or more equitable, than APA review. See Council of & for the Blind of Del. Cnty. Valley, 709 F.2d at 1532-33; cf. Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005) (“Yet however unsatisfactory the CSRA’s approach may appear to the plaintiffs, the fact that a remedial scheme chosen by Congress vindicates rights less efficiently than a collective action does not render the CSRA remedies inadequate for purposes of mandamus.”). Here, the alcohol permitting statute afforded Gulf Coast an adequate opportunity to seek judicial review of its ownership status. That Gulf Coast chose—and it was a choice—to not take advantage of the process Congress articulated does not make the process inadequate. Cf. Women’s Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990) (“Plaintiffs urge, however, that individual actions against discriminators cannot redress the systemic lags and lapses by federal monitors about which they complain. ... But under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy.”).
I agree with my colleagues that the district court lacked jurisdiction over Gulf Coast’s alcohol permit claim. But I do not agree with their intriguing theories for bending pleading standards, the statute Congress enacted, and our precedent on “final agency action.” -We should affirm the judgment of the district court because neither it—nor we—possess jurisdiction.over Gulf Coast’s alcohol permit claim.

, To be sure, there is ambiguity over the extent to which the Supreme Court’s decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) apply to FED. R. CIV, P. 12(b) challenges outside Rule 12(b)(6). And here, TTB did not move to dismiss under Rule 12(b)(6); only for lack of subje.ct-matter jurisdiction under Rule 12(b)(1). Nevertheless, any ambiguity is beside, the point: Twombly and Iqbal certainly speak to the pleading standards for stating a claim for relief under Rule 8, and Gulf Coast’s “revocation” labeling fails to meet that standard. Cf. Xia v. Kerry, 73, F.Supp.3d 33, 41 (D.D.C. 2014) (acknowledging a court's power to "dismiss[] a complaint sua sponte for failure to state a claim”). Under the statutes at issue, whether Gulf Coast’s conclusory labeling of "revocation” is true informs whether our subject-matter jurisdiction is bona fide. We therefore must heed the limits on sufficient jurisdictional pleading: (1) “we do not assume the truth of legal conclusions,” Ar-paio, 797 F.3d at 19; and (2) courts lack subject-matter jurisdiction when the claim “clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). There is no basis to read the TTB letter as a revocation, rather than confirming Gulf Coast's alcohol permit automatically terminated. This leaves only one logical conclusion: Gulf Coast labeled what happened a “revocation” to invoke Article III jurisdiction. Dismissing the Company's claim ' for lack of jurisdiction is proper.