H.G. GIBSON, Petitioner,

v.

NATIONAL TRANSPORTATION
SAFETY BOARD,
Respondent.

No. 95–70525.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided July 7, 1997.

Landon Gerald Dowdey, Washington, DC, and Brenda Grantland, Mill Valley, CA, for petitioner–appellant.

Anthony J. Steinmeyer and Peter R. Maier, United States Department of Justice, Washington, DC, for respondent–appellee.

Before: RONEY *, BEEZER and TROTT, Circuit Judges.

PER CURIAM.

Captain H.G. Gibson petitions for review of the National Transportation Safety Board's denial of his petition to reopen its investigation into TWA Flight 841's April 4, 1979 "air accident" and to reconsider its determination of the probable cause of the accident. We hold that we do not have jurisdiction under 49 U.S.C. § 1153, and we dismiss the petition to review.

On April 4, 1979, petitioner H.G. Gibson experienced severe difficulty controlling TWA Flight 841, a Boeing 727 aircraft. Gibson was the captain on Flight 841, which departed John F. Kennedy International Airport in New York en route to Minneapolis–St. Paul. Eighty-two passengers and seven crew members were aboard.

Gibson first experienced problems with the aircraft's controls as the airplane passed over Saginaw, Michigan. In Gibson's words, the aircraft "suddenly rolled uncontrollabl[y] to the right at 39,000 feet and plunged in a spiral dive some six miles toward the earth." Gibson, an experienced pilot, regained control by what he described as a "radical maneuver involving the lowering of the landing gear." Approximately forty-five minutes later, Gibson landed the aircraft at the Metropolitan Airport in Detroit, Michigan. The passengers and crew were evacuated. Eight people suffered slight injuries, while the aircraft sustained substantial damage.

The National Transportation Safety Board ("NTSB") conducted an investigation of

* The Honorable Paul H. Roney, United States Circuit Judge for the Eleventh Circuit, sitting by designation.

Flight 841's "air accident" pursuant to its statutory authority. 49 U.S.C. § 1132(a)(1)(A) (mandating the NTSB investigate "each accident involving civil aircraft"). On June 9, 1981, the Board issued an accident report as required by law. *Id.* § 1131(e). The report faulted Gibson and his crew for the flight's control problems. Specifically, the report cited "the flight crew's manipulation of the flap/slat controls" and "the captain's untimely use of the flight controls" as the probable cause of the accident. The NTSB substantiated its conclusion by reference to its investigator's findings. The report ignored, in large part, the direct testimony of the crew because it was said to conflict with the relevant physical evidence.

Gibson disputes these findings and in May 1991, ten years after the report was filed, he filed a petition to reopen the NTSB's investigation into Flight 841 and to reconsider the probable cause finding of the report pursuant to 49 C.F.R. § 845.41. The Air Line Pilots Association and TWA also questioned the NTSB's findings; both filed § 845.41 petitions. In total, at least four petitions to reopen and to reconsider were filed. To date the NTSB has denied two petitions, including Gibson's.

The NTSB denied Gibson's petition to reopen and reconsider on May 4, 1995. He filed a timely appeal. He asks that we review the NTSB's denial of his petition pursuant to 49 U.S.C. § 1153(b). Gibson has twice before sought judicial relief in this matter. On both occasions he petitioned the United States Court of Appeals for the District of Columbia to compel the NTSB to act on his petition to reopen and reconsider. That court denied Gibson's first request, and held his second request to be moot because the NTSB had issued a decision in the interim. At issue is the NTSBs denial of a petition to *reconsider* the findings and probable cause determinations of an accident report, not, technically, to *reopen:* the NTSB investigation at issue in this case has, under 49 C.F.R. § 845.51, remained "open" even after the initial accident report, and Gibson's petition was filed under 49 C.F.R. § 845.41 which, accordingly, speaks only of "reconsideration," not reopening.

We do not have subject matter jurisdiction to review the NTSB's action. Jurisdiction is a question of law reviewed *de novo. Del Hur, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 94 F.3d 548, 549 (9th Cir.1996). To date, no court has directly addressed the issue whether Title 49 U.S.C. § 1153, the Independent Safety Board Act, grants jurisdiction over an NTSB denial of a petition to reopen an accident investigation.

Section 1153 grants jurisdiction over certain NTSB orders:

(a) General.—The appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia Circuit may review a final order of the National Transportation Safety Board under this chapter. A person disclosing a substantial interest in the order may apply for review by filing a petition not later than 60 days after the order of the Board is issued.

(b) Persons seeking judicial review of aviation matters.—(1) A person disclosing a substantial interest in an order related to an aviation matter issued by the Board under this chapter may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60 days only if there was a reasonable ground for not filing within that 60-day period.

49 U.S.C. § 1153(a),(b)(1).

Jurisdiction over this matter is lacking because the NTSB's denial of Gibson's petition does not constitute an "order," even though Gibson does satisfy several of 49 U.S.C. § 1153's jurisdictional requirements: he has a substantial interest in this matter as the pilot of the aircraft involved in the accident; the NTSB's denial relates to an aviation matter dealt with by the Board; he resides in Nevada making the Ninth Circuit the proper court of appeals; and he petitioned for review within the requisite sixty-day period.

49 U.S.C. § 1153 carves out exclusive jurisdiction for this Court to review "final orders" of the NTSB from what would otherwise comprise district court jurisdiction to hear challenges to "final agency action," under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). Accordingly, to inform our determination of what is meant by the term "order" in 49 U.S.C. § 1153, we have first looked to the APA definition of an "order." *See Southern California Aerial Advertisers' Assn. v. FAA,* 881 F.2d 672, 675 (9th Cir.1989). The APA defines "order" as "the whole or part of a *final disposition,* whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing; . . . ." 5 U.S.C. § 551(2) (emphasis added).

The Supreme Court has determined that the term "final disposition" requires "some determinate consequences for the party to the proceeding." *International Telephone & Telegraph Corp. v. International Brotherhood of Elec. Workers,* 419 U.S. 428, 443, 95 S.Ct. 600, 609–10, 42 L.Ed.2d 558 (1975). Further, in a prior application of the requirement of a "final order" under 49 U.S.C. § 1486(a), the predecessor to 49 U.S.C. § 1153, we considered the similar concept of "final agency action." *Air California v. United States Dept. of Transp.,* 654 F.2d 616, 620–22 (9th Cir.1981). In *Air California,* we noted that the Supreme Court, in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), held that FDA regulations qualified as "final agency action" because

> they were "definitive" statements of the FDA's position; they had a "direct and immediate" effect on the day-to-day business of the complaining parties; they had the "status of law"; and "immediate compliance with their terms was expected."

*Air California,* 654 F.2d at 620 (citing *Federal Trade Comm. v. Standard Oil of Cal.,* 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (quoting *Abbott Laboratories,* 387 U.S. at 151–53, 87 S.Ct. at 1516–18)).

ITT provides that an order necessarily has "determinate consequences"; *Abbott* suggests a "definitive statement" carrying the "status of law" and "expected compliance" that produces a "direct and immediate effect" will qualify as an order. In construing our jurisdictional authority, we must interpret such vague and general formulations of "order" in the very specific context of NTSB activity:

> The Administrative Procedure Act . . . [is] a 'basic and comprehensive regulation of procedures in many agencies' . . . . [T]he Act 'contains many compromises and generalities and, no doubt, some ambiguities.' Because it was designed to regulate administrative proceedings throughout a wide spectrum of agency activities, its language is necessarily abstract in many places. *The more we may know about the particular agency proceeding to which the Act is sought to be applied, the better we will be able to apply it.*

*ITT,* 419 U.S. at 439, 95 S.Ct. at 607 (emphasis added) (citations omitted).

In the context of actions of the NTSB and its predecessor agencies, this Court has noted that the finality requirement may be satisfied by an "agency decision which, 'imposes an obligation, denies a right, or fixes some legal relationship,'" *Mace v. Skinner,* 34 F.3d 854, 857 (9th Cir.1994) (quoting *Atorie Air, Inc. v. FAA,* 942 F.2d 954, 960 (5th Cir.1991)); and we have noted that "other circuits have adopted the view that whether agency action is an 'order' within the scope of [49 U.S.C. § 1153's predecessor] section 1486(a) depends on the adequacy of the administrative record." *Southern California,* 881 F.2d at 676. Those generalizations notwithstanding, a close review of the nature of and law governing NTSB investigations and reports militates against our jurisdiction in this case.

The NTSB's initial investigations, by regulation, are "not conducted for the purpose of determining the rights or liabilities of any person." 49 C.F.R. § 831.4. By statute, no part of a report arising from such an investigation "may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 1154(b). "[A]ttempt[s] to impose upon the NTSB investigation rules of procedural fairness reflect[ ] a misconception of

the Board's mission [which is not to] determine civil liability or to adjudicate the rights of private persons, ... [but] 'to promote transportation safety by conducting independent investigations and by formulating safety improvement recommendations.'" *Graham v. Teledyne–Continental Motors*, 805 F.2d 1386, 1389 (9th Cir.1986) (quoting 49 U.S.C. § 1901(1) (1982)). Reports of such investigations do not entail the "determinate consequences" required of a final order that can invoke our jurisdiction.

The NTSB has promulgated a regulation which provides limited circumstances under which a petition for reconsideration of a report may be "entertained":

> *Petitions for reconsideration* or modification of the Board's findings and determination of probable cause ... *will be entertained only if* based on discovery of new evidence or on a showing that the Board's findings are erroneous. The petitions shall be in writing. Petitions which are repetitious of proposed findings submitted pursuant to § 845.27, or of positions previously advanced, and petitions filed by a party to the hearing who failed to submit proposed findings pursuant to § 845.27 will not be entertained. Petitions based on the discovery of new matter shall: identify the new matter; contain affidavits of prospective witnesses, authenticated documents, or both, or an explanation of why such substantiation is unavailable; and state why the new matter was not available prior to Board's adoption of its findings. Petitions based on a claim of erroneous findings shall set forth in detail the grounds relied upon.

49 C.F.R. § 845.41(a) (emphasis added). Gibson filed his petition to reconsider under that section. But 49 C.F.R. § 845.41 does not provide a right to reconsideration of the report, nor has Gibson cited any other provision in the statutes or regulations under which the NTSB would ever be required to reconsider a report. So the NTSB's denial does not deny him any right under the law.

The NTSB regulations do not abdicate the NTSB's complete discretion to conduct its investigations as it sees fit. The denial of Gibson's petition falls within that unreviewable discretion. Even if such a petition were granted, because NTSB investigations remain "open for the submission of new and pertinent evidence," 49 C.F.R. § 845.51, following the initial report, a reconsidered report would fall under the same statutes and regulations that restrict the legal effect of the initial report, and would have no determinate consequences. It follows that the NTSB's denial of a petition for reconsideration of a report also has no determinate consequences and is not a "final order of the [NTSB]" under 49 U.S.C. § 1153. Accordingly, we do not have jurisdiction under 49 U.S.C. § 1153.

**PETITION DISMISSED.**