# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 24, 2015          Decided June 19, 2015

No. 14-1034

YATISH JOSHI, INDIVIDUALLY, AS EXECUTOR OF THE ESTATE OF GEORGINA JOSHI AND MEMBER OF YATISH AIR, LLC,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD AND FEDERAL AVIATION ADMINISTRATION,
RESPONDENTS

On Petition for Review of a Decision of
the National Transportation Safety Board

*Brian E. Casey* argued the cause and filed the briefs for petitioner. *Timothy J. Maher* entered an appearance.

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief was *Michael J. Singer*, Attorney.

Before: GRIFFITH and MILLETT, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

GRIFFITH, *Circuit Judge*: After a tragic plane crash, the National Transportation Safety Board (NTSB) completed an

investigation and issued a Factual Report and a Probable Cause Report identifying the pilot, Georgina Joshi, as the most likely cause of the accident. The pilot's father, Yatish Joshi, filed a petition asking the agency to reconsider its conclusion in light of new evidence he gathered. The Board denied the petition. Joshi now seeks review of both the NTSB's reports of its investigation and the response to his petition for reconsideration. Because neither the reports nor the response can be considered a final order subject to judicial review, we dismiss this case for lack of jurisdiction.

I

On April 20, 2006, a private airplane crashed near the Monroe County Airport in Indiana, claiming the lives of the pilot, Georgina Joshi, and all four passengers. With help from two Federal Aviation Administration (FAA) investigators, the NTSB conducted an investigation of the accident in accordance with its statutory duties under the Federal Aviation Act to determine "the facts, circumstances, and cause or probable cause" of the crash. 49 U.S.C. § 1131(a)(1). The NTSB's purpose in conducting such investigations is "'to promote transportation safety'" and "'formulat[e] safety improvement recommendations.'" *Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1389 (9th Cir. 1986) (quoting 49 U.S.C. § 1901(1) (1982)); *see also* 49 C.F.R. § 831.4 ("Accident and incident investigations . . . are . . . used to ascertain measures that would best tend to prevent similar accidents or incidents in the future."). The agency does not engage in traditional agency adjudications, nor does it promulgate or enforce any air safety regulations. "Rather, it simply analyzes accidents and recommends ways to prevent similar accidents in the future." *Chiron Corp. v. NTSB*, 198 F.3d 935, 937 (D.C. Cir. 1999). At the conclusion of an investigation, the NTSB compiles and publishes a final

accident report that contains factual findings, a probable cause finding, and recommendations for any safety improvements thought necessary. *See* 49 U.S.C. § 1131(e); *see also Chiron*, 198 F.3d at 939. Such reports are used within government agencies to determine whether to promulgate additional safety regulations. Upon the completion of the investigation of Joshi's crash, the NTSB released a Factual Report and a Probable Cause Report (the Reports). The Factual Report explained the various data the agency gathered, including information on the aircraft, the weather conditions, the airport where Joshi attempted to land, and the state of the wreckage. The Probable Cause Report gave a brief summary of the accident and concluded that it was likely the product of the pilot's actions during the approach to landing.

Petitioner Yatish Joshi, the father of Georgina Joshi, believed that the investigation was not thorough and the Reports were faulty. He took it upon himself to hire an engineering firm to reconstruct the accident by analyzing radar data, air traffic control transmissions, witness statements, and other relevant materials available to the NTSB during the investigation. After gathering evidence, the engineering firm concluded that another plane most likely interfered with Georgina Joshi's flight path and caused her to take evasive action, which caused the crash. Yatish Joshi petitioned the NTSB to reconsider the Probable Cause Report[1] and submitted as new evidence the results of the investigation by the engineering firm, along with a Department of Justice (DOJ)

---

[1] Although Joshi only petitioned for reconsideration of the Probable Cause Report, he challenges both Reports on appeal. Because we conclude that neither of the Reports is an order of the NTSB, we need not concern ourselves with whether Joshi's failure to challenge the Factual Report before the NTSB raises questions of exhaustion.

letter addressing the settlement of civil litigation related to the accident.[2] Joshi argued in his petition that the engineering report showed that a second aircraft was operating in the area and contributed to the accident. He also claimed that the civil litigation had revealed that certain FAA failures played a role in the crash, that the FAA had admitted as much in the DOJ letter, and that this merited inclusion in the Probable Cause Report. The NTSB reviewed Joshi's materials, but found that the engineering firm's methodologies were flawed, that its conclusions were not supported by the evidence, and that new witness statements the firm had obtained and relied upon were consistent with the NTSB's original report. The NTSB also addressed the alleged FAA failures and concluded that proper procedures were used and that the DOJ letter Joshi submitted did not show otherwise. Because in its judgment the probable fault remained with the pilot, the NTSB denied the petition for reconsideration. Joshi now petitions this court for review of the Reports and the denial of his petition for reconsideration.

---

[2] In 2008, Joshi filed a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq*., asserting that the FAA's actions contributed to the crash because it failed to properly staff its facilities, adequately train the controller on duty the night of the accident, and provide adequate weather information to the controllers. That case was settled and, as a condition of the settlement, the Department of Justice provided Joshi with a letter. After reciting Joshi's arguments as to how the FAA's own actions had contributed to the accident, the letter concluded that "[a]lthough the United States would present a full defense to these allegations if this case were tried, we have agreed to settle this case based upon our assessment that the court could find merit in at least some of these allegations and determine that air traffic control negligence was a cause of this unfortunate crash." J.A. 186.

5

II

The Federal Aviation Act limits our jurisdiction to the review of "final order[s] of the National Transportation Safety Board." 49 U.S.C. § 1153(a). We have explained that to constitute a final, reviewable order, "an agency disposition must mark the consummation of the agency's decisionmaking process, and it must determine rights or obligations or give rise to legal consequences." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (internal quotation marks omitted). In considering whether NTSB reports satisfy these requirements, we note that we are not the first court to answer this question. In *Gibson v. NTSB*, 118 F.3d 1312 (9th Cir. 1997), the Ninth Circuit was presented with similar facts when a pilot petitioned for review of the NTSB's determination that he and his flight crew were responsible for a plane accident. The court concluded that there was no final agency action for it to review because the NTSB reports and denial of the motion for reconsideration lacked the necessary "determinate consequences." *Id.* at 1315.

We agree. According to NTSB regulations, accident investigations are "used to ascertain measures that would best tend to prevent similar accidents or incidents in the future." 49 C.F.R. § 831.4. They are considered "fact-finding proceedings with no formal issues and no adverse parties. They are not subject to the provisions of the Administrative Procedure Act and are not conducted for the purpose of determining the rights or liabilities of any person." *Id.* (citation omitted). Indeed, under the Federal Aviation Act and related NTSB regulations, no part of an NTSB accident report that relates to an accident investigation may be admitted as evidence or for any other use in civil litigation. 49 U.S.C. § 1154(b); 49 C.F.R. § 835.3. Thus, no legal consequences of any kind result from the NTSB's factual report or probable cause determinations.

Joshi alleges that various consequences have resulted from the Reports, including reputational harm, financial harm, emotional harm, and informational harm. But even if Joshi is right and has suffered such harms, these are practical consequences, not legal harms that can transform the Reports into a final agency order and trigger our jurisdiction. We explained the distinction between practical and legal consequences in *Reliable Automatic Sprinkler Co., Inc. v. CPSC*, 324 F.3d 726 (D.C. Cir. 2003). There, the agency conducted an investigation into the safety of the appellant's sprinkler heads, issued a statement of the agency's intention to make a preliminary determination that the sprinkler heads presented a substantial product hazard, and requested that the appellant take voluntary corrective action. *Id*. at 731. The appellant sued the agency, arguing that the agency lacked jurisdiction to regulate the sprinkler heads. We dismissed the case for lack of jurisdiction, holding that the agency had not completed a final agency action. We recognized that "there may be practical consequences, namely the choice [the appellant] faces between voluntary compliance with the agency's request for corrective action and the prospect of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement." *Id*. at 732. But, we explained, the agency's actions "clearly ha[d] no legally binding effect." *Id*. So too here. The consequences Joshi alleges are surely realities that he has faced following the release of the Reports, but unless the NTSB's actions result in a legal consequence, we lack the power to review them.

Joshi seeks to avoid the outcome in *Reliable* by citing our review of an FAA determination in what he claims is an analogous situation in *Aircraft Owners and Pilots Ass'n v. FAA*, 600 F.2d 965 (D.C. Cir. 1979) ("*AOPA*"). But that case involved a very different sort of agency undertaking, with very

different consequences. In *AOPA*, we held that the FAA's determination that the construction or alteration of a structure near an airport is hazardous constitutes a final order subject to judicial review, although it is "technically advisory in nature." *Id*. at 966 n.2. We cited to an earlier case, *City of Rochester v. Bond*, in which we explained that the FAA's hazard/no hazard determinations are final and "declaratory at least in the commonly understood sense of formally ascribing legal significance to facts." 603 F.2d 927, 933 (D.C. Cir. 1979). The FAA conducts such adjudications "with the intention that its advice will affect the proposed construction." *Id* (internal quotation marks omitted). And indeed, the FAA's determination of whether a hazard exists "directly affects the proceedings before other agencies." *Id*. at 933 n.27. The Federal Communications Commission, for example, relies on the determinations in considering whether to grant a construction permit to broadcasting companies. *Id*. Here, by contrast, the NTSB ascribes no "legal significance" to the facts it finds in determining the probable cause of the accident. The agency does not intend that its determination will be relied upon in other proceedings, and indeed the relevant statute and regulations forbid such reliance. *See* 49 U.S.C. § 1154(b); 49 C.F.R. § 835.3. The NTSB's report is only used within the government in making decisions regarding the need for further safety regulations.

Nor may we exercise jurisdiction to review the NTSB's denial of the petition for reconsideration. The reconsideration procedure Joshi used is not created by any statute. It is the result of a regulation that the NTSB promulgated to allow the agency to receive new evidence after it completes an accident investigation, ensuring that the agency develops safety recommendations based on the most complete record possible. As such, reconsideration petitions are simply another stage of the accident investigation procedure and are not subject to our

review for the same reason we do not have jurisdiction to review the Reports: neither the denial of the petition nor the Reports impose any legal consequences. The NTSB's denial of Joshi's petition for reconsideration differs from the Reports only in that it represents the final step of the agency's process as it relates to the new evidence Joshi brought forth. Although the response to Joshi's petition is the "consummation of the agency's decisionmaking process" regarding Joshi's evidence, our precedent is not satisfied by this alone. Before we may consider the agency's action a final "order," the action must "determine rights or obligations or give rise to legal consequences." *Safe Extensions, Inc.*, 509 F.3d at 598. It is at this step of our analysis that Joshi's argument falters. The NTSB's response "no more imposed legal obligations, fixed rights, or altered a legal relationship" than did the initial probable cause determination. *Aerosource, Inc. v. Slater*, 142 F.3d 572, 581 (3d Cir. 1998) (holding that the FAA's refusal to reconsider a decision did not constitute a final order when the initial decision imposed no legal obligations); *see also Gibson*, 118 F.3d at 1315 ("[T]he NTSB's denial of a petition for reconsideration of a report . . . has no determinate consequences and is not a 'final order of the [NTSB]' under 49 U.S.C. § 1153."). We conclude that we may not review either the Reports or the denial of Joshi's petition for reconsideration.[3] *See* 49 U.S.C. § 1153(a).

---

[3] Because we conclude that we lack jurisdiction to review the NTSB's determinations, we need not and do not consider the agency's alternative argument that Joshi lacks standing. *See Baltimore Gas and Elec. Co. v. FERC*, 252 F.3d 456, 461-62 (D.C. Cir. 2001) (declining to consider standing after finding that the court lacked jurisdiction on other grounds). In addition, Joshi seeks in this proceeding to challenge the FAA's role in the NTSB's investigation. But he asserts no independent basis for jurisdiction over that challenge. Our conclusion as to § 1153 thus closes off the one proffered avenue for jurisdiction over the FAA challenge as well.

## III

For the foregoing reasons, we dismiss the petition for lack of jurisdiction.